IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AZADEH TEHRANIAN,<br><br>Plaintiff,<br><br>v.<br><br>AFSANEH TEHRANIAN, an individual;<br>FAEZEH AGHAJANI, an individual;<br>REYHANEH AGHAJANI, an individual; and,<br>DOES 1-10.<br><br>Defendants. | Case No. 25-cv-11579 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Azadeh Tehranian ("Plaintiff") brings this Complaint against Defendants Afsaneh Tehranian, Faezeh Aghajani, Reyhaneh Aghajani, and Does 1-10 (collectively, "Defendants") for claims arising under law and equity. Plaintiff hereby alleges as follows:

**INTRODUCTION**

1. This case concerns the stolen inheritance of Plaintiff Azadeh Tehranian, among numerous other assets, all of which was diverted under false pretenses, and in breach of various fiduciary duties, by her sister.

2. Plaintiff's assets and her inheritance were diverted by the Plaintiff's sister, Afsaneh Tehranian, to herself, her husband, and her daughters (*i.e.*, the Plaintiff's nieces) to secure their green cards and increase their own wealth. Plaintiff's nieces now enjoy lives in the United States as a result of this stolen inheritance and stolen assets.

3. Despite Plaintiff's efforts to seek legal recourse in Iran, those efforts have completely foundered, as the husband of Plaintiff's sister—her brother-in-law—is a high-ranking, politically well-connected member of the regime.

4. Given that, on information and belief, the assets have been invested in the

1

United States, and they were diverted, among other reasons, to secure the residency of Defendants, and no adequate forum exists elsewhere, Plaintiff brings these claims to secure her share of her late father's inheritance and reclaim her assets—all of which is rightfully hers.

## THE PARTIES

5. Plaintiff Azadeh Tehranian is a former Iranian national who now resides in Orange County, California. Plaintiff left Iran in 2000 and became a naturalized U.S. citizen in 2016.

6. Defendant Afsaneh Tehranian is the sister of Plaintiff. On information and belief, she is a permanent resident and domiciled in Massachusetts. Defendant Afsaneh Tehranian is married to Dr. Hassan Aghajani.

7. Defendant Faezh Aghajani is a niece of Plaintiff, and a daughter of Defendant Afsaneh Tehranian. On information and belief, she is a permanent resident and domiciled in Massachusetts.

8. Defendant Reyhaneh Aghajani is a niece of Plaintiff, and a daughter of Defendant Afsaneh Tehranian. On information and belief, she is a permanent resident and domiciled in Massachusetts.

9. The true names and capacities of the Defendants named herein as Does 1 through 10 are unknown to Plaintiff, who therefore sues them under these fictitious names. Plaintiff will amend her pleading accordingly to add their true names and capacities when they become known.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this dispute based on the diversity of citizenship under 28 U.S.C. § 1332(a)(1), as there exists complete diversity between the parties and the amount in controversy, exclusive of interest and costs, greatly exceeds the $75,000 jurisdictional minimum.

11. The Court has personal jurisdiction over Defendants because each is domiciled in Massachusetts, and because key acts and omissions also occurred within this District.

12. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 on the grounds that all of the Defendants reside in the District of Massachusetts.

## GENERAL ALLEGATIONS

**A.    In 2014, Plaintiff's Father Passed Away in Iran.**

13. In 2013, Plaintiff's father had grown ill, so Plaintiff went to Iran to visit her father.

14. At the time, Plaintiff had been living in the United States for nearly fifteen years.

15. Shortly after Plaintiff arrived, her mother told her to speak with sister about signing a power of attorney form, because her father's health appeared to be deteriorating materially.

16. On the evening of August 14, 2013, in or around Tehran, Iran, Defendant Afsaneh Tehranian told her sister, Plaintiff, to sign a power of attorney form so that she could safeguard and look after Plaintiff's share of their late father's inheritance.

17. In the midst of the emotional turmoil of losing a parent, Plaintiff agreed and signed the form, relying on her sister's representations and assurances, the fact that she believed she could trust her sister, and because, at the time, Plaintiff's sister was living in Iran, whereas Plaintiff was living in the United States.

18. Plaintiff's elderly mother also told Plaintiff that she (the mother) had given Plaintiff's sister, Defendant Afsaneh Tehranian, power of attorney as well, so Plaintiff had reason to assume that her sister, Defendant Afsaneh Tehranian, would act in their collective best interests.

19. About a year later, Plaintiff's father passed away.

20. Her father's passing caused his estate to be transferred to his heirs.

21. Plaintiff was rightfully one of her father's living heirs.

22. Under Iranian law and Islamic custom, Plaintiff has a right to her inheritance.

23.     It was her father's wish that Plaintiff receive her share of his estate before he passed.

24.     Plaintiff also has a right to the assets she owned before giving her sister power of attorney.

**B.     Plaintiff Makes a Trip to Iran and Discovers That Assets Had Been Wrongfully Transferred.**

25.     In April 2023, Plaintiff made a trip to Iran.

26.     She visited a records office to look into the value of her share of her inheritance. It was at that time that she discovered Defendant Afsaneh Tehranian had wrongfully transferred her share of assets to Plaintiff's nieces, Defendants Faezh Aghajani and Reyhaneh Aghajani, and learned that Defendant Afsaneh Tehranian may disposed of documents relating to Plaintiff's title in land and ownership in her inheritance and other assets.

27.     Not only did these assets include her share of the inheritance, but it also included every piece of property Plaintiff had in her name and title, including several large parcels of land, government bonds, hundreds of gold coins, a two-bedroom condominium, and other property.

28.     On information and belief, Defendants Afsaneh Tehranian transferred title of Plaintiff's real estate to her husband, who is connected with the regime.

29.     On information and belief, Defendants Afsaneh Tehranian, Defendant Faezh Aghajani, and Defendant Reyhaneh Aghajani misappropriated Plaintiff's assets to use as investments into U.S. companies under the EB-5 Immigrant Investor Program, in exchange for green cards.  The EB-5 Immigrant Investor Program grants permanent residency to investors and their families who invest in a U.S. business that creates jobs.

30.     None of the Defendants ever notified Plaintiff that the assets had been used in this manner, or asked Plaintiff for her permission that the assets be transferred.

31.     On information and belief, the value of Plaintiff's share of the assets was several million dollars at the time of her father's passing, notwithstanding currency fluctuations

4

between U.S. dollars and Persian rials.

32. On information and belief, Plaintiff's assets have grown in value, especially after they were domesticated and invested in the United States, thereby unjustly enriching the two nieces, Defendants Faezh Aghajani and Reyhaneh Aghajani.

**C.    Plaintiff Seeks Legal Recourse in Iran to No Avail.**

33. Upon discovery this fraudulent transfer and misappropriation of her inheritance, Plaintiff revoked the power of attorney in a properly executed form in Iran.

34. Plaintiff also began searching for attorneys in Iran who would take her case to retrieve her share of the inheritance and help reclaim her other assets.

35. However, every attorney turned down her case when they learned who was involved.

36. Namely, Defendant Afsaneh Tehranian married a high-ranking member of regime, who started as a member of paramilitary  He has been a member of President Mahmoud Ahmedinejad's inner circle and served in his cabinet.

37. Defendant Afsaneh Tehranian's husband became a medical doctor who helped the Iranian regime interrogate protestors, including fellow doctors, during the Green Revolution.

38. Defendant Afsaneh Tehranian is herself politically well-connected, having been personally mentored by Iran's former Minister of Health and Medical Education.

39. On information and belief, each Iranian attorney Plaintiff contacted turned down her case out of fear of reprisal or otherwise dropped her case shortly after.  On information and belief, some of the attorneys she contacted, and with whom she tried to work, are being stalked.

40. On information and belief, the Iranian courts would not provide fair and impartial tribunal to Plaintiff, given that she moved to the United States decades ago, that there are longstanding tensions between the United States and Iran, and that the Defendants

are politically connected to the current regime.

41. On information and belief, the Iranian courts have a history of cases "disappearing" from the records office for months when dealing with politically connected individuals.

42. Furthermore, there is a consistent bias against unmarried women within the courts of Iran, so Plaintiff, who is unmarried, would face systemic and structural bias from the universally all-male courts of Iran.

## FIRST CLAIM FOR RELIEF

### Fraud

*(Against Defendant Afsaneh Tehranian)*

43. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

44. Defendant Afsaneh Tehranian made a false statement of material fact to Plaintiff, namely, on the evening of August 14, 2013, Defendant Afsaneh Tehranian told her sister, Plaintiff, to sign a power of attorney form. Defendant Afsaneh Tehranian told Plaintiff that she would look after her assets and safeguard Plaintiff's share of their father's inheritance, as his health was in steep decline at the time.

45. Defendant Afsaneh Tehranian knew it was false at the time she made that representation, as she had no intention of staying in Iran long term, but instead, intended to have her and her daughters move to the United States so they could pursue schooling and careers in medicine in the United States. Defendant Afsaneh Tehranian also knew that Plaintiff was experiencing emotional distress from the deterioration of her father's health, leaving her emotionally vulnerable to manipulation.

46. Defendant Afsaneh Tehranian induced Plaintiff to sign the power of attorney form, allowing her unfettered access not just to Plaintiff's share of her father's inheritance, but also all of her other assets and land in her name and title. Defendant Afsaneh Tehranian induced her to sign the form so that she could use those assets to enrich her daughters and help them secure green cards under the EB-5 visa program, pursuant to the Immigration Act

6

of 1990.

47. Plaintiff relied on Defendant Afsaneh Tehranian's representation as true. Plaintiff reasonably did so, as Defendant Afsaneh Tehranian was her sister, and Defendant Afsaneh Tehranian had secured power of attorney for both sister's elderly mother.  Plaintiff also reasonably relied on those representations because Plaintiff had been living in the United States for most of her life, and given the complexities of transborder issues and tensions between the two countries, it made sense for her sister, living locally in Iran, to safeguard and look after Plaintiff's share of the inheritance.

48. Plaintiff's reliance has resulted in damages, namely, the loss of access to the entire share of her inheritance, which, on information and belief, is valued in the several millions of dollars.

## SECOND CLAIM FOR RELIEF

### Breach of Fiduciary Duty

*(Against Defendant Afsaneh Tehranian)*

49. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

50. Plaintiff gave her sister, Defendant Afsaneh Tehranian, the power of attorney to look after her assets and safeguard them on her behalf, including what would become her share of her inheritance.

51. This act, especially in context of the parties' familial relationship, created a fiduciary relationship between the parties.

52. This created a duty to act in the best interests of her sister, the Plaintiff.

53. Defendant Afsaneh Tehranian breached that duty when she transferred Plaintiff's assets to her daughters, Defendants Faezh Aghajani and Reyhaneh Aghajani, thereby dispossessing Plaintiff of her assets.

54. This caused Plaintiff damage in the amount of her assets subject to the power of attorney form.

## THIRD CLAIM FOR RELIEF

### Violation of Iranian Civil Code, Article 667 *et seq.*

*(Against Defendant Afsaneh Tehranian)*

55. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

56. Under Iranian Civil Code Article 656, "An agency is a contract whereby one of the parties appoints the other as his representative for the accomplishment of some matter."

57. Plaintiff signed a power of attorney form in Iran that gave power of attorney to her sister, Defendant Afsaneh Tehranian. By doing so, Defendant Afsaneh Tehranian became an agent of Plaintiff under Iranian law.

58. Under Iranian Civil Code Article 667, the agent must, in his handlings and performances act in the interests of his principal, and must not exceed the limits of the authority which the principal has explicitly given him, or the authority which is inferred by custom, usage, and circumstantial evidence.

59. Defendant Afsaneh Tehranian exceeded the limits of the authority given to her by virtue of transferring the assets, despite Plaintiff telling Defendant to safeguard her assets for her use, and not someone else's benefit.

60. Defendant Afsaneh Tehranian also exceeded the authority inferred by custom, usage, and circumstantial evidence, by way of insisting on signing the power of attorney at a time of emotional duress. Furthermore, by way of her familial relationship, her acts of taking inheritance from her sister, even if shown to be inadvertent, violates longstanding custom.

61. Plaintiff has been damaged in the amount of her share of the inheritance and the amount of the value of her assets that were subject to the power of the attorney form.

## FOURTH CLAIM FOR RELIEF

### Conversion

*(Against All Defendants and Does 1-10)*

62. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

63. Under Iranian law, Plaintiff was entitled to her share of her late father's estate.

64. Plaintiff gave her sister, Defendant Afsaneh Tehranian, the power of attorney to look after those assets and safeguard them on her behalf.

65. By signing the power of attorney form, Defendant Afsaneh Tehranian also gained access to all Plaintiff's other assets, including land titles, bonds, coins, and other property.

66. Prior to April 2023, Defendant Afsaneh Tehranian transferred Plaintiff's share of their late father's estate to her daughters, Defendants Faezh Aghajani and Reyhaneh Aghajani, completely unbeknownst to Plaintiff.

67. On information and belief, Defendant Afsaneh Tehranian may have transferred Plaintiff's other assets to her daughters, as well as to her husband.

68. Plaintiff discovered this transfer in or around April 2023.

69. Plaintiff did not consent to the transfer of her assets to her nieces, or any other person (including Does 1-10).

70. Plaintiff did not consent to the transfer made by her sister or any other person (including Does 1-10).

71. Because her assets were wrongfully transferred, Plaintiff has been dispossessed of her assets, including her share of her inheritance.

72. This dispossession has resulted in damages, namely, the loss of access to the entire share of her inheritance, which, on information and belief, is valued in the several millions of dollars. It has also resulted in damages in the value of her prior assets that were dispossessed.

73. To the extent that Defendants have also used, consumed, or spent any portion of Plaintiff's estate, that share has been converted by way of destruction, and Plaintiff seeks any and all amounts of that loss as damages as well.

**FIFTH CLAIM FOR RELIEF**

**Unjust Enrichment**

*(Against All Defendants and Does 1-10)*

74. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

75. Defendant Afsaneh Tehranian received a benefit conferred by Plaintiff, namely, access to Plaintiff's assets, including securing a green card for herself and her daughters.

76. Defendants Faezh Aghajani and Reyhaneh Aghajani received a benefit conferred by Plaintiff, namely, Plaintiff's assets, as well as the benefit of receiving a green card for each of them under the EB-5 program.

77. It is possible that others, including Does 1-10, have been conferred a direct or indirect benefit from Defendants having access to, or otherwise receiving, Plaintiff's assets.

78. Defendant Afsaneh Tehranian knew or otherwise appreciated that these assets rightfully belonged to Plaintiff.

79. On information and belief, Defendants Faezh Aghajani and Reyhaneh Aghajani knew, should have known, or otherwise appreciated that the assets used to enrich their wealth and secure their green cards came in part from their aunt, the Plaintiff.

80. All three Defendants accepted or otherwise retained the benefits, including the dividends, premiums, monies, interest, and other benefits of owning investments domesticated in the United States.

81. On information and belief, these benefits have also accrued to Does 1-10, who also knew, should have known, or otherwise appreciated that these benefits were conferred by Plaintiff.

82. Accepting those benefits was a windfall for Defendants and retaining them to this day is inequitable.

83. Plaintiff has a right to her assets.

84. Plaintiff has a right to her inheritance, and it was her father's wish that Plaintiff receive her share of his estate before he passed away.

10

85. Accordingly, Plaintiff seeks restitution of her assets and her share of her inheritance and any ill-gotten gains from investments made using her assets, and reimbursement or indemnification for any waste or loss of value incurred by Defendants' use, retention, or acceptance of her assets or her share of the estate.

86. Plaintiff also seeks an imposition of a constructive trust on her share of the inheritance, any assets subsequently derived from that share, and all assets subject to the power of attorney form.

## SIXTH CLAIM FOR RELIEF

### Accounting

*(Against All Defendants and Does 1-10)*

87. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

88. Plaintiff is entitled to an accounting by virtue of the parties' fiduciary relationship and by action of Iranian law, among other bases.

89. Plaintiff lacks sufficient knowledge to know the precise current value of her estate or the amounts that were transferred by Defendant Afsaneh Tehranian to Defendants Faezeh Aghajani and Reyhaneh Aghajani.

90. The fact that assets were transferred and then invested domestically in the United States, on information and belief through the EB-5 program, adds complexity that requires accounting.

91. Plaintiff also lacks sufficient knowledge of her assets, as records and titles have disappeared as a result of Defendant Afsaneh Tehranian's acts.

92. On information and belief, Plaintiff's other assets or parts of her inheritance may have been diverted to other Does 1-10.

93. Plaintiff thereby seeks an accounting of the entire inheritance and her assets subject to the power of attorney form.

## **SEVENTH CLAIM FOR RELIEF**

### **Constructive Trust**

*(Against All Defendants and Does 1-10)*

94. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

95. A constructive trust is a flexible tool of equity designed to prevent unjust enrichment resulting from a violation of a fiduciary duty or confidential relationship, mistake, or other circumstances in which a recipient's acquisition of legal title to property amounts to unjust enrichment.

96. A constructive trust also may be imposed as a result of fraud on the transferor.

97. In view of the unjust enrichment enjoyed by the Defendants, Plaintiff seeks this Court to impose a constructive trust on Plaintiff's share of the inheritance and Plaintiff's misappropriated assets.

98. Independently, in view of the fraud by Defendant Afsaneh Tehranian, Plaintiff seeks this Court to impose a constructive trust on Plaintiff's share of the inheritance and Plaintiff's misappropriated assets.

99. Independently, in view of the breaches of fiduciary duty by Defendant Afsaneh Tehranian, Plaintiff seeks this Court to impose a constructive trust on Plaintiff's share of the inheritance and Plaintiff's misappropriated assets.

100. Plaintiff never acquiesced to the dispossession of her share of the inheritance or her assets.

101. Plaintiff acted expediently upon learning, in Iran, that a wrongful transfer and dispossession had occurred, namely, by seeking legal counsel in Iran, and only stopped seeking legal counsel in Iran when it became clear that she had exhausted all feasible avenues in view of her sister's connections, and her sister's husband's connections, to the regime.

102. Upon information and belief, there is no prejudice to Defendants for the Court to impose a constructive trust, as they have already secured their green cards using Plaintiff's investments.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff respectfully prays for relief as follows:

(a) compensatory damages in an amount appropriate to compensate her for damages caused by Defendant Afsaneh Tehranian's fraud and other wrongful conduct in an amount to be determined at trial;

(b) restitution from any and all Defendants for any unjust enrichment;

(c) a constructive trust on Plaintiff's share of the inheritance and any other assets dispossessed from her by Defendants while acting under power of attorney;

(d) an accounting of the entire inheritance from Plaintiff's late father and any other assets dispossessed from her by Defendants while acting under power of attorney;

(e) exemplary damages as permitted by law;

(f) punitive damages against Defendants;

(g) permanent and preliminary injunctive relief;

(h) her costs, attorneys' fees, prejudgment interest, and post judgment interest; and

(i) any other relief that the Court deems just and appropriate.

Plaintiff respectfully demands a trial by jury on all claims so triable.

Dated: May 30, 2025                    Respectfully submitted,

By: /s/ *Payal Salsburg*
**LAREDO, SMITH & KANE, LLP**
Payal Salsburg, BBO #586612
101 Federal Street, Suite 650
Boston, Massachusetts 02110
T: (617) 443-1100
F: (617) 443-1174
E: salsburg@laredosmith.com

**KATZ RUBY & CARLE LLP**
Michael I. Katz (*pro hac vice* forthcoming)
Byron H. Ruby (*pro hac vice* forthcoming)
Email: *mkatz@katzruby.com*

13

Email: *bruby@katzruby.com*
3420 Bristol Street, Suite 600
Costa Mesa, CA 92626
Telephone: (213) 561-4680

*Attorneys for Plaintiff*

14